**UNITED STATES of America,
Plaintiff and Appellee,**

v.

**Robert Gerrahan YAPLE, Jr., Appellant.**

**No. 71–1632.**

United States Court of Appeals,
Ninth Circuit.

Oct. 14, 1971.

Alan R. Jack (argued), Oregon City, Or., for appellant.

Jack G. Collins, Asst. U. S. Atty., (argued), Portland, Or., for plaintiff and appellee.

Before HAMLEY, WEICK* and MERRILL, Circuit Judges.

WEICK, Circuit Judge:

Yaple was tried separately and convicted by a jury on all counts of a five-count indictment charging him and others with conspiracy to firebomb the Selective Service State Headquarters in Portland, Oregon, to hinder and interfere with the administration of the Military Selective Service Act of 1967, and to possess an unregistered firearm, *i.e.,* a destructive device known as a Molotov cocktail, and with the substantive offenses, including accessory after the fact. The sentences under the various counts were made concurrent, to run for a total of ten years. 18 U.S.C. § 371, § 1361; 50 App., U.S.C. § 462; 26 U.S.C. § 5861, § 5871; 18 U.S.C. § 2 and § 3.

On appeal Yaple raises two issues: First, that the evidence is insufficient to sustain the convictions; and Second, that count 5 of the indictment does not

---

* Honorable Paul C. Weick, Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

state sufficient facts to constitute a crime. We affirm.

In the first paragraph of appellant's Statement of Facts in his brief, he admits:

"There was, in fact, a firebombing of Selective Service Headquarters in Portland, Oregon in the early morning hours of August 10, 1970. The act was committed by Jeffrey Murphy, Albert Miler, James Byrnes and Chris Smith (but not appellant). As a direct result thereof, Government property was damaged and the Selective Service activities were disrupted. This concludes, however, the material facts upon which the parties agreed."

The evidence disclosed that Yaple lived in a two-story frame house located on S.E. Tenth Street in Portland, with defendants Miler and Murphy. They were members of the White Panther Party. Activities of the Party were conducted in that house. Yaple was chairman of the Party in Portland and the Northwest Region. His duties were to see that things were run smoothly and to take care of all Party functions. Fire teams were organized to perform various acts. He participated in group discussions of bombings; activities of the group were reported to him. He gave lessons in weapons and had made a Molotov cocktail.

On the evening of August 9, 1970, before midnight, Yaple, Byrnes and co-conspirator Smith met in Yaple's upstairs room. Party member Crawford, who was acting as a watchman, overheard the words "* * * something about cocktails * * * getting burned * * *." He had observed more than the usual activity in the house that evening. Murphy, Miler, Byrnes, Yaple and Smith came downstairs from Yaple's bedroom. Either Byrnes or Smith went to the basement and came up with a box. Yaple said, "Okay, I don't want to know anything more about it."

Murphy, Miler, Byrnes and Smith left the house, taking with them the box, wine bottles, rags, an empty gasoline container, and a pistol. Wine bottles had been kept in the basement and were used to make the fire bombs. They obtained gasoline and went to Byrnes' house, where he and Smith made the fire bombs. In the early morning hours of August 10th they proceeded to the Selective Service State Headquarters, firebombed them, and returned to Yaple's house.

Crawford heard of the bombing over the police-band radio, and he told Yaple. who said, "Out of sight." Yaple instructed Crawford to go "on alert, a state of readiness."

Miler and Byrnes were the first to return from the bombing. They ran upstairs and talked with Yaple. Shortly thereafter Murphy and Smith returned and stated that the police had stopped them, and that they had given an alibi to the effect that they had been at the home of Skip and Debbie Knox, who were members of the Party. Yaple told them to go over to the Knox home and tell the Knoxes "that the four of us had been at their house all night and that morning." He further instructed them not to tell the Knoxes what happened. Yaple gave further instructions about watching for the police. Miler and one, John Bohn, went to the Knox home and awakened them, and asked them to furnish the alibi, which Knox agreed to do.

The group was instructed by Smith, Yaple and other people to forget about the whole matter and not to talk about it any more.

■ In considering the sufficiency of the evidence on appeal, it must be viewed in the light most favorable to the Government. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Nelson, 419 F.2d 1237 (9th Cir. 1969).

■ The conspiracy was established beyond any reasonable doubt. Only slight additional evidence was necessary to connect Yaple with it. Poliafico v. United States, 237 F.2d 97, 104 (6th Cir. 1956), cert. denied, 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597. Ac-

tually the evidence connecting Yaple with the conspiracy was more than slight; it was overwhelming.

■ There was also substantial evidence to prove that Yaple aided and abetted in the commission of the substantive offenses. United States v. Sannicandro, 434 F.2d 321 (9th Cir. 1970). The wine bottles, box, rags, gasoline can and pistol were in Yaple's constructive possession. It was not necessary that Yaple actually be present at the time of the firebombing.

Credibility of the witnesses was for the jury to determine.

The claim that the indictment does not allege an offense was not raised in the District Court. In any event, there is no merit to it.

Affirmed.